1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

CENTRAL DISTRICT OF CALIFORNIA

10
11
12
13
14
15
16

| | |
|---|---|
| DEBORAH ANN DeBENEDETTI, )<br><br>Plaintiff, )<br><br>v. )<br><br>MICHAEL J. ASTRUE, )<br>Commissioner of Social Security, )<br><br>Defendant. ) | Case No. EDCV 10-1137-OP<br><br>MEMORANDUM OPINION; ORDER |

17      The Court[1] now rules as follows with respect to the disputed issues listed in

18  the Joint Stipulation ("JS").[2]

19  / / /

20  / / /

21  / / /

22
23
24      [1]  Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before
the United States Magistrate Judge in the current action.  (See Dkt. Nos. 8, 9.)

25
26      [2]  As the Court stated in its Case Management Order, the decision in this
case is made on the basis of the pleadings, the Administrative Record, and the
27  Joint Stipulation filed by the parties.  In accordance with Rule 12(c) of the Federal
Rules of Civil Procedure, the Court has determined which party is entitled to
28  judgment under the standards set forth in 42 U.S.C. § 405(g).

**I.**

**DISPUTED ISSUES**

As reflected in the Joint Stipulation, the disputed issues which Plaintiff raises as the grounds for reversal and/or remand are as follows:

1.      Whether the Administrative Law Judge ("ALJ") properly considered the opinions of the medical expert, the vocational expert ("VE"), and the Agency reviewing physician; and

2.      Whether the ALJ properly considered Plaintiff's testimony and the lay witness statement.

(JS at 3.)

**II.**

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied.  DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991).  Substantial evidence means "more than a mere scintilla" but less than a preponderance.  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson, 402 U.S. at 401 (citation omitted).  The Court must review the record as a whole and consider adverse as well as supporting evidence.  Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986).  Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld.  Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

/ / /

/ / /

2

1  **III.**

2  **DISCUSSION**

3  **A.    The ALJ's Findings.**

4          The ALJ found that Plaintiff's date last insured was June 30, 2004.

5  (Administrative Record ("AR") at 15.)  The ALJ concluded that prior to June 30,

6  2004, Plaintiff had the severe impairments of diabetes mellitus type II, systemic

7  lupus erythematosus, degenerative disc disease of the cervical spine, possible right

8  carpal tunnel syndrome, right shoulder repetitive trauma injury, right knee

9  arthritis, Hashimoto's thyroiditis, and morbid obesity.  (Id. at 15.)  He found

10  Plaintiff had the residual functional capacity ("RFC") to perform light work with

11  the following limitations:  standing only two hours in an eight-hour workday, no

12  climbing ladders, no work at unprotected heights, no forceful gripping/grasping/

13  twisting with the right hand, occasional fine manipulation with the right hand,

14  occasional neck motion with no extremes of motion, no work above shoulder level

15  on the right, and Plaintiff's head should be held in a comfortable position most of

16  the time with her head in a fixed position for fifteen to thirty minutes occasionally.

17  (Id. at 17.)  The ALJ concluded that, prior to Plaintiff's date last insured, Plaintiff

18  could not perform her past relevant work, but could perform alternative work as a

19  security guard.  (Id.)  Thus, the ALJ concluded that Plaintiff was not disabled prior

20  to the date last insured.  (Id.)

21  **B.    The ALJ Properly Considered the Testimony of the Medical Expert, the**

22          **VE, and the Agency Physician.**

23          **1.    Medical Expert's Testimony.**

24          Plaintiff argues that the ALJ failed to properly consider the testimony of the

25  medical expert, Samuel Landau, M.D.  Specifically, Plaintiff argues that the ALJ

26  misinterpreted the medical expert's conclusions regarding the date on which

27  Plaintiff met Listing 1.02.  In addition, Plaintiff claims that the ALJ erred in

28  rejecting the medical expert's conclusion that Plaintiff needed an air-conditioned

3

work environment.  (JS at 4-6.)

       **a.**     **Material Misrepresentation Regarding Date Plaintiff Met Listing 1.02.**

At Plaintiff's hearing before the ALJ, Dr. Landau offered medical expert testimony.  Dr. Landau testified that Plaintiff suffers from morbid obesity with Type II diabetes mellitus, systemic lupus erythematosus without significant organ involvement, degenerative disc disease of the neck, possible right carpal tunnel syndrome, repetitive trauma injuries to the right shoulder, right knee arthritis, Hashimoto's thyroiditis with preserved thyroid function, fibromyalgia syndrome, and psychiatric diagnoses.  (AR at 32.)  Dr. Landau testified that, due to Plaintiff's morbid obesity, her impairments are equivalent to Listing 1.02 for arthritis of a major weight bearing joint.  However, Dr. Landau clarified that Plaintiff only equaled the Listing as of December 18, 2007, the date on which an MRI revealed Plaintiff's knee problems.  (Id. at 32-33.)  Upon questioning by Plaintiff's counsel, Dr. Landau corrected his estimated date of disability and explained that Plaintiff would have equaled Listing 1.02 as of June 2006.  (Id. at 36.)

Dr. Landau further offered his opinion as to Plaintiff's physical limitations, as follows:

> She would be limited to standing two hours out of eight, standing and walking, though she could sit for six hours out of eight with normal breaks, which is every two hours, lift and carry ten pounds frequently, 20 pounds occasionally, and occasionally stoop and bend.  She could climb stairs, but she can't climb ladders, work at heights or balance.  On the right side she can't do forceful gripping, grasping, and twisting with her hand, but she can do occasional fine manipulation.  She can do occasional neck motion, but should avoid extremes of motion, her head should be held in a comfortable position most of the time.  She can maintain a fixed head position for 15 to 30 minutes at a time

4

1    occasionally.  She can't work above shoulder level on the right, and her

2    work environment should be air-conditioned, and that would be all.

3    (Id. at 32-33.)

4        In his opinion, the ALJ explained that Plaintiff's last date insured was June

5    30, 2004.  (AR at 13.)  The ALJ then discussed Dr. Landau's equivalency

6    determination.  The ALJ stated that Dr. Landau found Plaintiff's impairments

7    equivalent to Listing 1.02 only as of December 18, 2007, "well beyond her date

8    last insured."  (Id. at 19.)  The ALJ did not discuss Dr. Landau's revised estimate

9    that Plaintiff's impairments equaled Listing 1.02 as of June 2006.

10       Plaintiff concedes that the June 2006 date set by Dr. Landau was beyond

11   Plaintiff's date last insured, but nevertheless argues that the ALJ's decision should

12   be reversed because his reference to the December 18, 2007, date amounts to a

13   material misrepresentation of the record.  (JS at 4.)

14       Even assuming the ALJ misrepresented the record when he found December

15   18, 2007, to be the date on which Plaintiff's impairments equaled the Listing,

16   rather than the June 2006 date later settled on by Dr. Landau, the error was

17   harmless.  Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1990) (harmless error

18   rule applies to review of administrative decisions regarding disability).  An

19   individual is not entitled to disability insurance benefits unless the disability

20   existed on or before the individual's date last insured.  Tidwell v. Apfel, 161 F.3d

21   599, 601 (9th Cir. 1998); 20 C.F.R. §§ 404.131; 404.320(b)(2).  Had the ALJ

22   found that Plaintiff's impairments equaled Listing 1.02 in June 2006, rather than

23   December 2007, it would still necessitate a finding that Plaintiff was not disabled

24   prior to June 30, 2004, her date last insured.  Accordingly, Plaintiff was not

25   entitled to a finding of disability regardless of whether she became disabled in

26   June 2006 or December 2007.

27

28

5

1
2

### b. **Failure to Include RFC Limitation for Air-Conditioned Work Environment.**

3      Plaintiff also faults the ALJ for failing to include in his RFC assessment,

4 a limitation for an air-conditioned work environment as recommended by Dr.

5 Landau. (JS at 5.)

6      The ALJ is charged with the ultimate determination of a plaintiff's RFC. 20

7 C.F.R. § 404.1546(c). Here, there was no evidence in the record that would

8 necessitate an air-conditioned work environment. In fact, Plaintiff testified that

9 she preferred not to go out in cold temperatures. (AR at 42.) Thus, the ALJ

10 reasonably adopted each of Dr. Landau's recommended limitations, except the

11 requirement for an air-conditioned work-environment.

12      At most, Dr. Landau's conclusion regarding the need for an air-conditioned

13 work environment created a conflict in the record. However, it was the duty of the

14 ALJ to resolve such a conflict. Tommasetti v. Astrue, 533 F.3d 1035, 1041-42

15 (9th Cir. 2008) ("[T]he ALJ is the final arbiter with respect to resolving

16 ambiguities in the medical evidence."). As this limitation was not supported by

17 any medical evidence, the ALJ reasonably resolved the conflict.

18      Accordingly, relief is not warranted on Plaintiff's claims regarding the

19 medical expert.

20 ### 2. **VE Testimony.**

21      Plaintiff argues that because the ALJ erred in rejecting the medical expert's

22 opinion regarding an air-conditioning limitation, the ALJ further erred in failing to

23 include such a limitation in his hypothetical question to the VE. Plaintiff also

24 challenges the ALJ's failure to include Plaintiff's subjective complaints of fatigue

25 in his hypothetical to the VE. (JS at 5-6.)

26      "In order for the testimony of a VE to be considered reliable, the

27 hypothetical posed must include 'all of the claimant's functional limitations, both

28 physical and mental' supported by the record." Thomas v. Barnhart, 278 F.3d 947,

1   956 (9th Cir. 2002) (quoting Flores v. Shalala, 49 F.3d 562, 570-71 (9th Cir.

2   1995)).  Hypothetical questions posed to a VE need not include all alleged

3   limitations, but rather only those limitations which the ALJ finds to exist.  See,

4   e.g., Magallanes v. Bowen, 881 F.2d 747, 756-57 (9th Cir. 1989); Copeland v.

5   Bowen, 861 F.2d 536, 540 (9th Cir. 1988); Martinez v. Heckler, 807 F.2d 771,

6   773-74 (9th Cir. 1986).  As a result, an ALJ must propose a hypothetical that is

7   based on medical assumptions, supported by substantial evidence in the record,

8   that reflects the claimant's limitations.  Osenbrock v. Apfel, 240 F.3d 1157,

9   1163-64 (9th Cir. 2001) (citing Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir.

10  1995)); see also Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995) (although

11  the hypothetical may be based on evidence which is disputed, the assumptions in

12  the hypothetical must be supported by the record).

13          As the Court concluded above, the ALJ properly excluded an air-

14  conditioning requirement from his RFC determination.  In addition, as discussed

15  below, the ALJ properly rejected Plaintiff's subjective complaints of impairment,

16  including her complaints of fatigue, as they were lacking credibility.  Accordingly,

17  the ALJ was not obligated to include those limitations in his hypothetical to the

18  VE.  See, e.g., Magallanes, 881 F.2d at 756-57; Copeland, 861 F.2d at 540;

19  Martinez, 807 F.2d at 773-74.  Thus, relief is not warranted on Plaintiff's claims

20  regarding the VE's testimony.

21          **3.    Opinion of the Agency Reviewing Physician.**

22          Plaintiff faults the ALJ for failing to consider the conclusion of an Agency

23  reviewing physician that Plaintiff could perform only occasional handling and

24  fingering with her right upper extremity.  (JS at 6.)

25          In a May 14, 2007, Physical Residual Functional Capacity Assessment of

26  Plaintiff, Agency reviewing physician K.J. Wahl, M.D., concluded that Plaintiff

27  could only occasionally handle and finger with the right upper extremity.  (AR at

28  527.)

7

There is no dispute that Plaintiff suffers from limitations with her right upper extremity.  In fact, it is apparent from the ALJ's RFC assessment that he did not reject the opinions of the Agency physician.  In assessing Plaintiff's RFC, the ALJ concluded that Plaintiff was limited to "no forceful gripping/grasping/ twisting with the right hand; occasional fine manipulations with the right hand." (Id. at 17.)  Although the ALJ did not specifically discuss Plaintiff's ability to "handle" or "finger" with her right upper extremity, the ALJ's RFC assessment materially encompasses the Agency physician's conclusion that Plaintiff was limited to occasional handling and fingering with her right upper extremity.

Accordingly, Plaintiff cannot show that the ALJ improperly rejected the findings of the Agency physician, or otherwise failed to properly consider the doctor's findings.

**C.   The ALJ Properly Considered Plaintiff's Credibility and Any Error in Failing to Address the Lay Witness Testimony Was Harmless.**

**1.   Plaintiff's Credibility.**

Plaintiff faults the ALJ for failing to provide sufficient reasons for rejecting her subjective complaints of impairment.  (JS at 15-17.)

In his decision, the ALJ enumerated ten reasons for rejecting Plaintiff's subjective complaints of impairment and finding that her testimony regarding her symptoms was not fully credible:  (1) Plaintiff's admitted activities of daily living are not indicative of a disabling level of impairment; (2) Plaintiff's psychotropic medication was prescribed by her general physician rather than a psychiatrist; (3) Plaintiff did not begin receiving mental health treatment until after her date last insured; (4) Plaintiff's mental health symptoms appeared to begin resolving themselves in a short period of time; (5) the consultative psychological evaluation resulted in a finding that Plaintiff's IQ score was in the low-average range; (6) Plaintiff's results on testing during the consultative psychological evaluation were indicative of over-reporting of psychological symptoms; (7) an EMG evaluation of

1   Plaintiff's upper extremities showed no evidence of cervical radiculopathy; (8) an

2   Electromyography Study showed only slight left median neuropathy/neuropathies

3   at the wrist; (9) no physician has ever found Plaintiff's impairments to meet or

4   equal a Listing prior to her date last insured; and (10) the objective medical

5   evidence does not establish impairments that were likely to produce disabling pain

6   or other limitations for a twelve-month period prior to her date last insured.  (AR

7   at 20.)

8       An ALJ's assessment of pain severity and claimant credibility is entitled to

9   "great weight."  Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v.

10  Heckler, 779 F.2d 528, 531 (9th Cir. 1986).  When, as here, an ALJ's disbelief of a

11  claimant's testimony is a critical factor in a decision to deny benefits, the ALJ

12  must make explicit credibility findings.  Rashad v. Sullivan, 903 F.2d 1229, 1231

13  (9th Cir. 1990); Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981); see also

14  Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (an implicit finding that

15  claimant was not credible is insufficient).

16      Under the "Cotton test," where the claimant has produced objective medical

17  evidence of an impairment which could reasonably be expected to produce some

18  degree of pain and/or other symptoms, and the record is devoid of any affirmative

19  evidence of malingering, the ALJ may reject the claimant's testimony regarding

20  the severity of the claimant's pain and/or other symptoms only if the ALJ makes

21  specific findings stating clear and convincing reasons for doing so.  See Cotton v.

22  Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986); see also Smolen v. Chater, 80 F.3d

23  1273, 1281 (9th Cir. 1996); Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993);

24  Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1991).

25      To determine whether a claimant's testimony regarding the severity of his

26  symptoms is credible, the ALJ may consider the following evidence:  (1) ordinary

27  techniques of credibility evaluation, such as the claimant's reputation for lying,

28  prior inconsistent statements concerning the symptoms, and other testimony by the

9

claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; and (4) testimony from physicians and third parties concerning the nature, severity, and effect of the claimant's symptoms. Thomas, 278 F.3d at 958-59; see also Smolen, 80 F.3d at 1284.

In this case, the ALJ provided several clear and convincing reasons for finding Plaintiff's subjective complaints of impairment less than credible.[3] Plaintiff admitted to a rather wide array of activities of daily living despite her claims of disabling symptoms. Significantly, Plaintiff's March 29, 2007, Function Report, which was completed closer in time to her date last insured than was her testimony at the December 17, 2008, hearing before the ALJ, indicates a significant ability to engage in activities of daily living. For example, in her Function Report, Plaintiff admitted to being able to help her kids get ready for school, being able to shower, dress herself, do light cleaning, cook, care for the family dog, complete household shopping, and pick up her daughter from school. (AR at 137-44.) In the Third Party Function Report, Plaintiff's husband confirmed Plaintiff's ability to engage in these types of activities. (Id. at 128-35.) Although Plaintiff and her husband claimed in the Function Reports that Plaintiff's activities were at times hindered by her need to rest, her level of daily activity certainly supports the ALJ's credibility finding.

Next, despite Plaintiff's complaints of symptoms relating to carpal tunnel syndrome, a January 27, 2004, Electromyography Study showed only "slight chronic left median neuropathy at the wrist." (Id. at 174.)

---

[3] Although Plaintiff's results on testing during her consultative psychological exam indicated that she over-reported her symptoms to appear more impaired than she really was, the consultative examiner did not make an ultimate finding of malingering. (AR at 585.) Accordingly, the Court applies the more stringent "clear and convincing" test to the ALJ's determination of Plaintiff's credibility.

Finally, although consultative psychologist Kim Goldman, Psy.D., did not make an ultimate finding of malingering, she reported that Plaintiff's results on the Minnesota Multiphasic Personality Inventory-2 were invalid, as they "represent an over reporting of psychopathology in an attempt to appear more disturbed than she is in reality." (Id. at 585.)  This evidence of over-reporting supports the ALJ's credibility determination.

While the Court does not address the adequacy of each of the ten reasons identified by the ALJ for rejecting Plaintiff's credibility, the presence of potentially insufficient reasons does not detract from the ALJ's ultimate credibility determination as long as other, legally sufficient reasons are identified by the ALJ. See Carmickle v. Comm'r of Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008).

Accordingly, relief is not warranted on Plaintiff's claim regarding the ALJ's credibility analysis.

### 2.   Lay Witness Testimony.

Plaintiff claims that the ALJ erred in ignoring the Third Party Function Report completed by Plaintiff's husband.  (JS at 18.)

Plaintiff's husband reported in a March 30, 2007, Third Party Function Report that Plaintiff is able to get her kids ready for school, pick her daughter up from school, do some cooking, bathe and care for herself, and complete household shopping.  (AR at 128-31.)  Plaintiff's husband also explained that Plaintiff naps during the day and often sits in her massage recliner.  (Id. at 128, 130.)  He also explained that Plaintiff gets assistance with household chores from himself and their children, and that many of the tasks Plaintiff completes cause her pain.  (Id. at 129, 130, 131.)

Title 20 C.F.R. §§ 404.1513(d) and 416.913(d) provides that, in addition to medical evidence, the Commissioner "may also use evidence from other sources to show the severity of  [an individual's] impairment(s) and how it affects [her]

11

1  ability to work," and the Ninth Circuit has repeatedly held that "[d]escriptions by

2  friends and family members in a position to observe a claimant's symptoms and

3  daily activities have routinely been treated as competent evidence." Sprague v.

4  Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987).  This applies equally to the sworn

5  hearing testimony of witnesses (see Nguyen v. Chater, 100 F.3d 1462, 1467 (9th

6  Cir. 1996)), as well as to unsworn statements and letters of friends and relatives.

7  See Schneider v. Comm'r of Soc. Sec. Admin., 223 F.3d 968, 975 (9th Cir. 2000).

8  If the ALJ chooses to reject such evidence from "other sources," he may not do so

9  without comment.  Nguyen, 100 F.3d at 1467.  The ALJ must provide "reasons

10 that are germane to each witness." Dodrill, 12 F.3d at 919.

11      The ALJ's failure to address lay witness testimony generally is not

12 harmless.  Curry, 925 F.2d at 1131.  In failing to address a lay witness statement,

13 the error is harmless only if "a reviewing court . . . can confidently conclude that

14 no reasonable ALJ, when fully crediting the testimony, could have reached a

15 different disability determination." Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d

16 1050, 1056 (9th Cir. 2006); see also Robbins v. Soc. Sec. Admin., 466 F.3d 880,

17 885 (9th Cir. 2006).

18      Here, the ALJ failed to mention the Function Report completed by

19 Plaintiff's husband.  However, even if the ALJ's failure to address the opinions of

20 Plaintiff's husband was error, the error is harmless because no reasonable ALJ

21 would have reached a different disability determination having considered it.

22 Stout, 454 F.3d at 1056; see also Robbins, 466 F.3d at 885.  This is because the

23 opinions of Plaintiff's husband mirrored the subjective complaints of Plaintiff,

24 which were properly rejected by the ALJ, as discussed above.  Thus, the Court

25 finds that even if this testimony was fully considered, no reasonable ALJ could

26 have reached a different disability determination.  Stout, 454 F.3d at 1056; see

27 also Robbins, 466 F.3d at 885.  Accordingly, any error was harmless.

28 / / /

**IV.**

**ORDER**

Based on the foregoing, IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner, and dismissing this action with prejudice.

Dated:  March 24, 2011

HONORABLE OSWALD PARADA
United States Magistrate Judge

13